**No. 26-1136**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

**MICHAEL J. LINDELL and FRANKSPEECH, LLC,**
*Appellants,*

v.

**ERIC COOMER, PH.D.,**
*Appellee.*

---

On Appeal from the Judgment of the
United States District Court for the District of Colorado
The Honorable Nina Y. Wang, United States District Judge
No. 1:22-cv-01129-NYW-SBP

---

**APPELLANTS' REPLY BRIEF**

**ORAL ARGUMENT REQUESTED**

**Barbara Podlucky Berens** (MN #209788)
Berens & Miller, P.A.
80 South 8th Street, Suite 3720
Minneapolis, MN 55402
(612) 349-6171

***Attorneys for Appellants Michael J. Lindell and Frankspeech, LLC***

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii
**INTRODUCTION** ........ 1
**BACKGROUND OF ISSUES** ........ 2
**ARGUMENT** ........ 7
**I. COOMER'S ARGUMENTS FAIL TO DEFEAT FRANKSPEECH'S ENTITLEMENT TO IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT** ........ 7
A. Frankspeech Played No Role in the Content of the Three Statements ........ 8
B. There Has Been No Waiver ........ 11
1. Frankspeech Was Not Required to Anticipate the District Court's Legal Error When It Applied Sua Sponte a State Law Principle as to Alleged Agency Where the Federal Statute Expressly Defined the Test that Must Be Applied. ........ 12
2. The Offering of a Proposed Jury Instruction Fails to Constitute an Express Waiver of Another Legal Issue. ........ 13
3. A Ruling that State Agency Law Does Not Apply Fails to Eliminate a Court's Ability to Find that a Corporate Entity Is an Information Content Provider ........ 14
**II. THE COURT SHOULD REVERSE ON THE ISSUE OF ACTUAL MALICE** ........ 15
A. The Applicable Legal Standard ........ 15
B. The District Court Improperly Ignored the Evidence of Subjective Belief in the Truth of the Statements at Issue on Appeal ........ 16
C. The Alleged Inherent Improbability of Lindell's Statements Fails to Support a Viable Finding of Actual Malice ........ 17
D. Lindell's Alleged Hostility Is Insufficient, Standing Alone, to Demonstrate Actual Malice ........ 19
E. The Jury's Rejection of the Punitive Damages Claim Against Lindell Is Probative of the Absence of Actual Malice Where Both Are Based on the Same Allegations ........ 20
**III. THE DAMAGES AWARDS CANNOT STAND** ........ 21

A. The Damages Awards as to the Defamation Claims Fail Because of Causation and Other Issues and Not as a Result of a Libel-Proof Plaintiff Argument ....................21
B. The Punitive Damages Award Against Frankspeech Cannot Stand....................23
**IV. THE IIED VERDICT AGAINST FRANKSPEECH CANNOT STAND** ....................24
**CONCLUSION**....................26
CERTIFICATE OF COMPLIANCE....................27
CERTIFICATE OF DIGITAL SUBMISSION ....................27
CERTIFICATE OF SERVICE ....................27

## TABLE OF AUTHORITIES

**Cases**

*AECOM Tech. Servs. v. Flatiron AECOM, LLC*, No. 25-1140, 2026 U.S. App. LEXIS 24603, ___ F.4th ___ (10th Cir. Aug. 14, 2026).................................. 14
*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980 (10th Cir. 2000)10
*Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984)................................ 15-16
*Brown v. Petrolite Corp.*, 965 F.2d 38 (5th Cir. 1992)...................................... 18
*Coomer v. Make Your Life Epic, LLC*, 140 F.4th 1269 (10th Cir. 2025).............1
*Dallas Creek Water Co. v. Huey*, 933 P.2d 27 (Colo. 1997)............................. 13
*Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997)..................... 18
*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) ................. 8, 10, 15, 25
*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989)..... 15
*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) .. 11
*Revell v. Hoffman*, 309 F.3d 1228 (10th Cir. 2002) ............................... 15, 17-18
*Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002) .................................... 18
*Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028 (10th Cir. 2013)................................................................................................ 19
*Talley v. Time, Inc.*, 923 F.3d 878 (10th Cir. 2019) .......................................... 20
*United States v. Hernandez-Rodriguez*, 352 F.3d 1325 (10th Cir. 2003) ......... 12

***Statutes and Rules***

47 U.S.C. § 230 ................................................................ 2, 8, 11, 12, 13, 14, 24
47 U.S.C. § 230(c)(1)................................................................. 2, 5, 8, 13, 25
47 U.S.C. § 230(e)(3)........................................................................... 13, 24
47 U.S.C. § 230(f)(3) ........................................................... 6, 13, 15, 25

## INTRODUCTION

In April of 2022, Appellee Eric Coomer ("Coomer") asserted claims of defamation, intentional infliction of emotional distress ("IIED"), and civil conspiracy against Michael J. Lindell ("Lindell"), Frankspeech LLC ("Frankspeech," and collectively "Appellants"), and My Pillow Inc. ("My Pillow"). 1 A.112 (First Am. Compl. ¶¶ 117-30). The numerous statements Coomer alleged to be defamatory principally flow from a statement originally made by Joe Oltmann ("Oltmann"), who said he had heard someone named "Eric" on a telephone call and the person named "Eric" said that he had made sure that President Donald Trump would not win the 2020 presidential election. At that time, Coomer worked for a company that manufactured voting machines. *See, e.g.*, *Coomer v. Make Your Life Epic, LLC*, 140 F.4th 1269, 1273 (10th Cir. 2025)(setting forth background of Oltmann's comments).

Ten of the statements challenged by Coomer were sent to the jury, which found Lindell liable in defamation for two of the statements. It found Frankspeech liable for those same two statements plus a third statement made by an unrelated third party, David Clements, during an August 2021 Cyber Symposium ("Symposium"). 13 A.3642-43 (Trial Tr. at 521-22); 13 A.3772-73 (*Id*. at 651-52); 16 A.4635 (*Id*. at 984). The jury refused to award punitive damages against Lindell

or hold Lindell liable for IIED based on any statements made by either Lindell or Clements, and found that MyPillow was not liable for anything.

Lindell and Frankspeech appealed on several matters, including Frankspeech's clear entitlement to statutory immunity under the Communications Decency Act, the improper findings on actual malice, and the errors of law and fact regarding Coomer's purported harm and damages.

Coomer's response brief fails to defeat Appellants' bases for appeal, and Lindell and Frankspeech therefore ask the Court to grant their requested relief.

## BACKGROUND OF ISSUES

Lindell and Frankspeech, in their initial brief, asked the Court to reverse the judgment against them for several reasons. *First*, Frankspeech is immune from liability under 47 U.S.C. § 230(c)(1) as a matter of law because, as shown by undisputed testimony, it merely broadcasts the content of others without playing any role in the creation of that content or the encouragement of the development of content. Given that, Frankspeech is entitled to statutory immunity under the Communications Decency Act, 47 U.S.C. § 230 (the "Act").

Appellants also contend that the district court's reliance on Colorado state law agency principles to rule that Lindell was Frankspeech's "alter ego" or "agent" and that Clement was Frankspeech's agent, and therefore Frankspeech has no statutory immunity under the Act must be reversed because the district court applied the

wrong standard of law where the Act expressly defines the federal standard of liability that is to apply.

*Second*, Lindell and Frankspeech argued that the evidence was legally insufficient to meet the clear and convincing standard required to show that either acted with actual malice. Lindell further contended that the jury's explicit rejection of any punitive damages award against him undercuts the district court's finding of actual malice where the inquiry as to both is based on the same set of facts, that the district court's reliance on evidence of Lindell's alleged "hostility" toward Coomer fails to demonstrate actual malice, and that there is no viable basis to find that Frankspeech acted with actual malice.

*Third*, Lindell and Frankspeech contend that the jury's damages award rests on an improper and speculative measure, a measure that is legally insufficient because it fails to meet, inter alia, well-established causation and harm requirements. Coomer testified that his reputation had already been "destroyed" and "shattered" by statements by other parties (primarily Oltmann) before any of the challenged statements at issue here had been made. 12 A.3415-19 (Trial Tr. at 294-98). Coomer further testified that he had already sued twenty-five other people or entities for republishing Oltmann's purportedly defamatory statements *before* the statements at issue in this lawsuit had been made by Lindell or Clements. 12 A.3415 (*Id.* at 294).

*Fourth*, despite Coomer's admission about the harm and damages already caused by earlier, alleged defamatory statements made by other, unrelated individuals or entities, Coomer never produced any evidence to separate the substantial harm he conceded had been caused by others versus the harm allegedly caused by Lindell or Frankspeech. Thus, the amount of damages awarded by the jury is speculative at best.

*Fifth*, Lindell and Frankspeech argue that the estimate proffered by Coomer's damages expert, Doug Bania ("Bania"), is also fatally flawed. Bania estimated that the cost to repair Coomer's reputation was $2.7 million, based on the hypothetical future costs purportedly required to conduct public relations campaigns, search remediation, and public perception management, and not actual past pecuniary loss, such as lost wages or lost business opportunities. 14 A.4015 (Trial Tr. at 1401). But Bania had been specifically instructed **not** to consider the preexisting harm caused by Oltmann and twenty-five other individuals which Coomer admitted had "destroyed" his reputation. 14 A.4015 (*Id.*). That specific instruction is contrary to clear law defining the causation element of a legitimate damages analysis, and thus, Bania's damages estimate is speculative and should be ignored.

The arguments raised by Coomer in his response brief fail to defeat Appellants' bases for their appeal. *First*, Coomer argues that every legal defect raised by Lindell and Frankspeech had been waived by them. That, however, is not

the case. For example, Coomer argues Frankspeech has waived any right to raise the inapplicability of Colorado state law of agency for purposes of determining the question of its immunity under 47 U.S.C. § 230(c)(1) because Frankspeech had suggested a jury instruction on vicarious liability which was based on Colorado state law. Merely proposing a jury instruction on an unrelated legal issue fails, however, to meet the legal standard to find a valid waiver, that is, the express and specific abandonment of a precise legal right or argument, particularly where the legal issue, here, the existence of an agency relationship under the common law, involves a different legal standard and a separate inquiry than the legal standard and analysis necessary to evaluate liability or immunity under the Communications Decency Act.

Furthermore, the district court applied Colorado state agency law for the first time, and **sua sponte**, when denying Appellants' posttrial motions. Lindell and Frankspeech were not required to anticipate, much less address, legal issues in the abstract, but only those issues that are specifically raised. The district court's sua sponte application of Colorado state law of agency in its posttrial order is not such a situation, and thus the Court should reject Coomer's argument that Appellants waived this argument by failing to raise it in their posttrial motions.

Coomer's arguments about Appellants' purported waiver merely confirm the legitimacy of the legal errors raised by Lindell and Frankspeech.

*Second*, if Coomer's arguments and the district court's analysis were followed to their logical conclusion, every third-party speaker as well as the host or livestreamer of that speaker's content would be found to be liable under the Communications Decency Act if their relationship met the requirements of the common law of agency, independent of the analysis of the role, if any, the host played in the allegedly offensive conduct. That is not the law. The common law inquiry to determine the existence of an agency relationship substantially differs from the requirements necessary to enjoy immunity under the Communications Decency Act. The inquiry under the Act is not based on a generalized agency analysis of the relationship between speaker and host, but instead focuses on whether the host "is responsible, in whole or in part, for the creation or development of information" that is being challenged. 47 U.S.C. § 230(f)(3). That federal law standard must be applied, not the common law of agency.

Indeed, a host and speaker might have an agency relationship under the common law for other purposes and still not meet the statutory standard to impose liability for content under the Act. Here, the undisputed evidence reveals that Frankspeech had no role in creating or developing or encouraging the development of the content of the three defamatory statements at issue, and the district court's reliance on state agency law to find Frankspeech liable, rather than following the provisions and applying the requirements of the Communications Decency Act

itself, should be rejected as a matter of law, and the Court should conclude that Frankspeech has immunity because the undisputed evidence reveals that it played no role in the content on which Coomer sued.

*Third*, Coomer argues that the reputational harm he testified had been inflicted by two dozen earlier publishers of the same challenged statements, all flowing from statements first made by Oltmann, is now recast as harm caused by Lindell and Frankspeech. Not only does that argument fly in the face of well-established law about causation, harm, and damages, but it is eviscerated by Coomer's own testimony admitting that those earlier publishers had already "destroyed" his reputation.[1]

Based on the foregoing, Lindell and Frankspeech ask the Court to reject Coomer's argument and grant the relief requested in this appeal.

## ARGUMENT

### I. COOMER'S ARGUMENTS FAIL TO DEFEAT FRANKSPEECH'S ENTITLEMENT TO IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT.

In response to Frankspeech's claim that it qualifies for statutory immunity,

---

[1] At trial, Coomer specifically testified his reputation had already been "destroyed" and "shattered" by statements from other parties (primarily Oltmann) before any of the challenged statements at issue here had been made, 12 A.3415-19 (Trial Tr. at 294-98) and that he had sued twenty-five other people for republishing Oltmann's purportedly defamatory statements before the statements at issue here were made. 12 A.3415 (*Id.* at 294).

Coomer raises two arguments, that Frankspeech was responsible for the challenged content and that Appellants waived any argument about the application of Colorado state law of agency. Neither argument defeats Frankspeech's right to statutory immunity under 47 U.S.C. § 230.

### *A. Frankspeech Played No Role in the Content of the Three Statements.*

Coomer argues, however, that Frankspeech is not entitled to immunity because it convened, hosted, and livestreamed the Symposium, had Lindell as a speaker, and posted its logos. None of the actions relied upon by Coomer, however, played any role in the development, much less the specific encouragement of the development, of what was allegedly offensive about the challenged content in the three statements at issue.[2] *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009)(ruling that a finding of responsibility requires such specific encouragement of "offensive" content).

Furthermore, the undisputed evidence demonstrates that Frankspeech played no role at all in the development of the offensive content of those three statements. Lindell's undisputed testimony reveals that Frankspeech is "a publishing thing like

---

[2] The jury found Frankspeech liable in defamation for three statements: Lindell's statement made during a May 9, 2021 interview; Lindell's statement made during an April 6, 2022 interview; and Clements's August 12, 2021 Symposium statement, *see* 11A.3007-08 (Frankspeech Verdict Form Nos. 1c, 1e, 1g), all of which constitute "information provided by another information content provider." 47 U.S.C. § 230(c)(1).

YouTube" that "**doesn't do any content itself**." 17 A.4854 (Trial Tr. at 1203) (emphasis added).[3] Lindell described Frankspeech as a platform "built for people to upload videos," on which "anybody can upload stuff." 17 A.4910-12 (Trial Tr. at 1259-61).

Lindell also testified that he did not control the content posted on Frankspeech other than his own statements, which he made solely on his own behalf, and not on behalf of Frankspeech, and that he never knew either Oltmann or Clements before the Symposium. 16 A.4633-34, 17 A.4855, 14 A.4048-49 (Trial. Tr. at 982-83, 1203, 1434-35).

Lindell "didn't know David Clements" when Clements took the stage at the Symposium, Lindell "didn't know Joe Oltmann was there," 17 A.4910 (Trial Tr. at 1259), and Lindell had "never seen" Oltmann and "did not know he was coming to the cyber symposium." 16 A.4582 (Trial Tr. at 931).

Oltmann testified that Lindell did not tell Oltmann to "take the stage and tell [his] story," that Lindell did not know Oltmann or other speakers "were going on stage on August 12th," and Lindell "never told David Clements to go on stage and interview [Oltmann] and say things about Dr. Coomer." 13 A.3773-74 (Trial Tr. at 652-53). Even Coomer's counsel conceded that Clements and Oltmann "got on

[3] Given this undisputed testimony, the Court should also reject Coomer's argument that Frankspeech is a content provider in its own right.

stage to talk about whatever they wanted to" at the Symposium. 11 A.3151 (Trial Tr. at 30).

On such an evidentiary record, this Court affirmed summary judgment in defendant's favor based on its entitlement to statutory immunity where:

> Plaintiff presents no evidence to contradict Defendant's evidence that [the information providers] alone created the stock information at issue. Moreover, Plaintiff presents no evidence to suggest that Defendant was 'responsible, in whole or in part, for in [sic] the creation and development of information' published on its Quotes & Portfolios area. *See* 47 U.S.C. § 239(f)(3).

*Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).

Coomer also argues that *Accusearch* supports his position, but it fails to do so because the factual underpinnings of that case are distinguishable. Accusearch had "knowingly solicited" researchers to obtain confidential telephone records for Accusearch which had never been published and then Accusearch "transformed" those records "into a publicly available commodity." *Accusearch*, 570 F.3d at 1199-1200.

Here in contrast, Oltmann started broadcasting his statements about Coomer in November 2020, and a number of entities and individuals had republished Oltmann's statements well before the three statements at issue in this case were made. Coomer's numerous other lawsuits arising from Oltmann's statements and

Coomer's admissions during trial in this case confirm that the underlying information was already public.

Furthermore, there is no evidence that Frankspeech solicited any confidential information and thereafter made that confidential information publicly available. Thus, unlike Accusearch, Frankspeech did not "transform" confidential information into a public commodity and Coomer's reliance on *Accusearch* is misplaced.

Furthermore, Frankspeech had no role in the creation or specific encouragement of the allegedly "offensive" content at issue here. Thus, Frankspeech is entitled to statutory immunity. *See Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410-11 (6th Cir. 2014)(ruling that "merely taking action that is necessary to the display of allegedly illegal content" fails to defeat immunity under § 230 because it does not materially contribute to the allegedly illegal content).

***B. There Has Been No Waiver.***

Coomer argues that Frankspeech waived its statutory immunity for two reasons: (1) its alleged failure to challenge the application of Colorado state agency law in its posttrial motions; and (2) it had offered a vicarious liability jury instruction based on Colorado law. Neither argument supports the existence of a viable waiver of Frankspeech's statutory immunity.

*1. Frankspeech Was Not Required to Anticipate the District Court's Legal Error When It Applied Sua Sponte a State Law Principle as to Alleged Agency Where the Federal Statute Expressly Defined the Test that Must Be Applied.*

As discussed above, 47 U.S.C. § 230 and the cases construing it define an express, federal standard to determine whether a provider should be deemed responsible for allegedly improper content, that is, by creating or specifically encouraging the allegedly offensive portion of the content at issue.

Given that express federal statutory standard, the district court's sua sponte application of an unrelated principle of Colorado state agency law is not an issue that Frankspeech could (or should) have anticipated, and therefore the Court should reject this contention. *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003)(when addressing this issue, holding that "[w]e conclude that when the district court sua sponte raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court").

Moreover, the district court's rationale for turning to Colorado agency law is flawed. The district court supported its misapplication of state law by observing that a company can only act through its agents, but that is not the proper inquiry or

analytical framework.[4] Rather, after Defendants rested, their counsel timely and properly set forth the correct legal basis to support Frankspeech's statutory immunity, specifically arguing that:

> Frankspeech is a platform like YouTube, like Rumble, like Twitter, and is covered by the Communications Decency Act [and] [t]here has been no evidence today, nor in this trial, that Frankspeech, itself, created content.

15 A.4365 (Trial Tr. at 1751). A state law regarding the potential attribution of fault which is applied in unrelated circumstances clearly conflicts with §§ 230(c)(1) and 230(e)(3), and the Court should reject that notion that Frankspeech waived its right to assert its immunity under § 230 by failing to challenge the district court's unexpected application of an inapposite state law standard.

### 2. *The Offering of a Proposed Jury Instruction Fails to Constitute an Express Waiver of Another Legal Issue.*

Coomer also contends that Appellants' offering of a jury instruction concerning vicarious liability based on Colorado state law constitutes a waiver of

---

[4] The district court specifically stated that because a company "can only act through its agents," Clements's and Lindell's statements could be attributed to Frankspeech under Colorado agency law. 17 A.5020-22 (Order on Posttrial Motions at 10-12) (citing *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo. 1997)). The district court's analysis thus ignores the federal standard for determining the existence of § 230 immunity. Section 230(f)(3) defines "information content provider" by the actual participation in creation or development, whereas state agency law answers an entirely different question, whether an entity is bound by an individual who did (or did not) act within the scope of their authority.

Frankspeech's right to object to the application of Colorado state law regarding agency. That, however, is not the case. Merely proposing a jury instruction on an unrelated legal issue does not meet the high legal standard required to find a valid waiver, that is, the express and specific abandonment of a precise, legal right or argument. *See, e.g.*, *AECOM Tech. Servs. v. Flatiron | AECOM, LLC*, No. 25-1140, 2026 U.S. App. LEXIS 24603, at *25-26, ___ F.4d ___ (10th Cir. Aug. 14, 2026) ("Waiver is the intentional relinquishment of a known right or privilege," and party arguing waiver had occurred failed to meet the "high standard" to establish it)(citation omitted).

That is particularly true here, where the legal issue addressed by Colorado state agency law, that is, whether an agency relationship under the state law, is a wholly separate inquiry than the analysis of whether to potentially impose liability or find immunity under the Communications Decency Act. The Court should therefore reject this argument and conclude that there has been no waiver.

#### 3. *A Ruling that State Agency Law Does Not Apply Fails to Eliminate a Court's Ability to Find that a Corporate Entity Is an Information Content Provider.*

Coomer also argues that if the Court were to rule that Colorado agency law does not apply to Frankspeech, that would mean that no corporate provider could ever be deemed an information content provider under the Act. That argument not only flies in the face of § 230, but it is also a non sequitur.

Under controlling federal law, a corporate entity can be deemed an information content provider using the same analysis that is applied to determine whether a natural person is a content provider, that is, whether the person or corporate entity created or developed the information in accordance with the federal standard in § 230(f)(3).[5] The Court should therefore reject this argument.

## II. THE COURT SHOULD REVERSE ON THE ISSUE OF ACTUAL MALICE.

### *A. The Applicable Legal Standard.*

This Court has ruled that in order to support a finding of actual malice, there must be "sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." *Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002)(citation omitted; emphasis added in original). This inquiry is "a *subjective* one -- here must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of . . . probable falsity.'" *Id*. at 1233 (quoting *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989))(emphasis added in original).

This Court is to review the record independently. "Appellate judges . . . must exercise independent judgment and determine whether the record establishes actual

[5] The Court applied this federal test in *Accusearch* to analyze the issue as to a corporate defendant. 570 F.3d at 1197-99.

malice with convincing clarity." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 514 (1984).

Applying that standard, the district court's ruling on actual malice fails as a matter of law.

### *B. The District Court Improperly Ignored the Evidence of Subjective Belief in the Truth of the Statements at Issue on Appeal.*

The district court confirmed that Frankspeech and Lindell acted with actual malice. 17 A.5028 (Posttrial Order at 18). The district court, however, never asked the jury any specific question on actual malice[6] nor did it instruct the jury on the most important factor to consider when evaluating actual malice, that is, the evidence of either Lindell's or Clements' subjective belief in the truth of their challenged statements.[7]

In confirming the jury verdict, the district court instead relied on two impermissible items to support its conclusion: that Lindell was allegedly "hostile" toward Coomer and that Lindell's challenged statements were "inherently improbable." 17 A.5028 (Posttrial Order at 18). Neither item supports a finding of

---

[6] *See generally* 11 A.3003-06 (Lindell Verdict Form at 1-4); 11 A.3007-10 (Frankspeech Verdict Form at 1-4).

[7] The district court failed to instruct the jury on the most important factor to determine actual malice, that is, the consideration of the evidence of Lindell's (or Clements') subjective belief in the truth of his statements. *See generally* 10A.2930-3000, 11.A3001-02 (Final Jury Instructions at 1-73).

actual malice, particularly where the district court failed to address the most important factor, the substantial evidence of Lindell's subjective belief in the truth of his statements.

### *C. The Alleged Inherent Improbability of Lindell's Statements Fails to Support a Viable Finding of Actual Malice.*

The district court relied heavily on the purported inherent improbability of Lindell's two statements to support the verdict on defamation. This Court's ruling in *Revell*, however, makes clear that the district court's reliance on "inherent improbability," as virtually the sole basis to support a finding of actual malice, particularly in the face of the evidence of Lindell's subjective belief in the truth of his statements (including, inter alia, Lindell's expenditure of millions of dollars to support his statements), fails to demonstrate Lindell's actual malice:

> Throughout his brief, [plaintiff] characterizes the existence of malice as facially 'apparent' and 'obvious' based on the 'inherent improbability' of [defendant's] statements.…
>
> [Plaintiff] confuses what might be considered *some* evidence of actual malice with what, standing alone, will suffice to carry his burden of proving actual malice. Even if we were to accept that [defendant's] statements were 'inherently improbable,' this would merely lessen -- rather than meet -- [plaintiff's] burden of offering some extrinsic evidence of [defendant's] actual malice. *St. Amant* makes quite clear that *New York Times* requires 'either deliberate falsification or reckless publication despite the publisher's awareness of probable falsity.'

*Revell*, 309 F.3d at 1233 (internal quotations and citations omitted).[8] Thus, without "some extrinsic evidence" of actual malice, the inherent improbability of the challenged statements fails to meet the high standard to show actual malice. *Id.*

Here, the extrinsic evidence clearly supports Lindell's subjective belief that the two statements at issue were true. Among other things, Lindell testified that he relied on information from multiple sources, including Oltmann, when Lindell made the challenged statements and that Lindell believed the information about Coomer's statements during a conference call, as recounted by Oltmann, because that information came from individuals Lindell viewed as credible after he conducted extensive due diligence. 14 A.4068-69 (Trial Tr. at 1454-55). Lindell did not doubt the truthfulness of the challenged statements when he made them and he testified that years later, he still believed the truth of those statements based on the evidence available to him. 14 A.4069-70 (*Id*. at 1455-56).

There is also evidence of the actions taken by Lindell which demonstrates his subjective belief in the truth of his statements. For example, Lindell spent "tens of

---

[8] The Court should reject Coomer's argument that rulings from several other circuits, including *Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002), *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997), and *Brown v. Petrolite Corp.*, 965 F.2d 38 (5th Cir. 1992), cast doubt on this Court's ruling in *Revell* that inherent improbability, standing alone, is insufficient to demonstrate actual malice. *Revell*, 309 F.3d at 1233.

millions of dollars" gathering election-integrity evidence. 16 A.4507 (Trial Tr. at 856). Lindell further testified that he hired experts and spent fifty million dollars of his own money investigating the claims on which his statements were based. 16 A.4516-17 (*Id*. at 865-66); 16 A.4585 (*Id*. at 934). This evidence of Lindell's specific actions, in addition to his testimony about his thoughts, further demonstrates Lindell's subjective belief in the truth of his challenged statements and reveals that the district court's reliance on inherent implausibility to the exclusion of all of the evidence of Lindell's subjective belief is reversible error.

### *D. Lindell's Alleged Hostility Is Insufficient, Standing Alone, to Demonstrate Actual Malice.*

Coomer argues that Lindell's alleged hostility towards Coomer is relevant to the analysis of actual malice. Appellants, however, never argued that alleged hostility is irrelevant,[9] but rather that any purported hostility, even when coupled with the alleged inherent implausibility of the challenged statements, fails to support the district court's affirmance of the defamation verdict, particularly where there is

[9] *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028 (10th Cir. 2013), which Coomer cites, is not to the contrary and in fact, supports Appellants' position. As with the cases cited by Appellants in their initial brief, *Spacecon* also ruled that an alleged defamer's ill will, standing along, is insufficient to demonstrate his actual malice. *Id.* at 1043 (ruling that the defendant's "pro-union bias is not enough to show he acted with actual malice" when making a film containing purportedly false statements about a company that was violating the terms of its labor agreements).

substantial evidence that Lindell did subjectively believe in the truth of the challenged statements.

In support of this argument, Appellants also cited a number of cases, including *Talley v. Time, Inc.*, 923 F.3d 878 (10th Cir. 2019), which expressly ruled that "ill will toward the plaintiff, or bad motives *are not elements of the New York Times standard*" and that "[e]vidence of [defendant's] … bias is not enough to show he acted with actual malice." *Id*. at 905 (quotation omitted)(emphasis added). Those cases set forth the proper standard for evaluating alleged hostility in the context of determining actual malice and further support Lindell's position that the district court placed too much weight on Lindell's purported ill will.

### *E. The Jury's Rejection of the Punitive Damages Claim Against Lindell Is Probative of the Absence of Actual Malice Where Both Are Based on the Same Allegations.*

When addressing Coomer's claim for punitive damages, the jury answered "no" to question as to whether Lindell "acted in a fraudulent, malicious, or willful and wanton manner," the standard for determining whether punitive damages should be awarded. Given that Coomer alleged that the same statements made by Lindell support both Coomer's defamation claim against Lindell as well as Coomer's punitive damages claims against Lindell, a finding that Lindell did not act in a willful or wanton manner when making those same challenged statements clearly undercuts any suggestion that he acted with reckless disregard for the truth of those statements.

Coomer, however, misapprehends Appellants' position on this issue. Lindell does not argue that the standards for punitive damages and actual malice are identical, but rather a person who makes statements with the knowledge of falsity, or who proceeds in the face of serious doubts regarding their truth, (i.e., with actual malice) is also likely to have acted with a conscious disregard of a high probability of injury to the allegedly defamed individual, an inquiry which is clearly relevant to a claim seeking punitive damages under Colorado law. Given that, the jury's rejection of Coomer's punitive damages claim undercuts any notion that Lindell acted with actual malice.

## III. THE DAMAGES AWARDS CANNOT STAND.

### *A. The Damages Awards as to the Defamation Claims Fail Because of Causation and Other Issues and Not as a Result of a Libel-Proof Plaintiff Argument.*

Coomer misconstrues Appellants' position about the significant causation issues regarding his alleged harm and damages based on his own testimony about the harm and damages he had already suffered as a result of earlier defamatory statements made by others.[10] He instead argues that Appellants are merely claiming

[10] Among other things, Coomer testified his reputation had been "destroyed" by Oltmann as well as twenty-five other individuals or entities that had rebroadcast Oltmann's statements before the statements at issue here, that Coomer had sued those twenty-five individuals or entities, and that Oltmann's statements had been published "hundreds of times before Lindell interviewed Oltmann." 12 A.3415-18 (Trial Tr. at 294-97).

that he is a libel-proof plaintiff, and that Appellants waived this argument because they never requested a jury instruction on the issue.

This argument is baseless. Appellants are not arguing that Coomer is libel proof; rather they argue that Coomer's failure to provide any competent basis for the jury to segregate his admitted, preexisting harm (i.e., his "destroyed" reputation) and the damages caused by others as opposed to that allegedly caused by Appellants is a fundamental flaw in the damages awards as to Coomer's defamation claims.

Coomer also argues that the district court's jury instruction about any damages caused by third parties resolves the issue. It does not. *First*, Coomer provided no competent evidence or legitimate methodology for the jury to make that allocation. *Second*, Coomer's damages expert was specifically instructed **not** to consider the preexisting, devastating harm to Coomer's reputation (a harm he admitted) or the damages that Coomer may have suffered as a result of that preexisting harm. That limitation imposed on Coomer's damages expert clearly conflicts with the law regarding causation, harm, and damages, and renders the amount of damages to which Coomer's damages expert testified impermissibly speculative.

Indeed, the jury's question during its deliberation, that is, "Can the jury defer the damages awarded to the plaintiff to the judge due to a lack of

expertise/evidence?"[11] underscores the total absence of any legitimate methodology to ascertain damages.

### *B. The Punitive Damages Award Against Frankspeech Cannot Stand.*

In response to Frankspeech's claim that the punitive damages award against it is fatally flawed, Coomer argues that the jury could have awarded those damages based solely on Clements' challenged statement. There is, however, no legitimate basis to find Frankspeech liable for Clements' statement. *First*, as set forth above, Frankspeech played no role in the development of the allegedly offensive content of Clements' statements. *Second*, Coomer's attorney conceded during his opening statement that Clements was free to say whatever he wanted at the Symposium. 11 A.3151 (Trial Tr. at 30). Given that admission, there is no legitimate basis to conclude that Clements was acting as Frankspeech's agent because Clements had complete control over his own comments. *Third*, there is no basis to find that Frankspeech "acted in a fraudulent, malicious, or willful and wanton manner" as regards to Clements' statements given the admission by Coomer's attorney that Clements could say whatever he wanted.

[11] *See* 18 A.5257-64 (Courtroom Minutes with jury questions).

## IV. THE IIED VERDICT AGAINST FRANKSPEECH CANNOT STAND.

Coomer argued in response to Frankspeech's appeal of the intentional infliction of emotional distress ("IIED") claim that the issue has not been preserved because it was not raised in Frankspeech's posttrial motions. In its posttrial motions, however, Frankspeech argued that it is entitled to statutory immunity under 47 U.S.C. § 230 for all of the allegedly defamatory statements at issue. Coomer's IIED claim is based on those very same challenged statements. *See, e.g.*, 11 A.3007-08 (Frankspeech Verdict Form Nos. 1a-1k; No. 2a)(asking jury about the ten allegedly defamatory statements and then instructing the jury to go on to answer the question about the IIED claim, No. 2a, only if the jury answered "yes" to one or more questions about whether the ten statements were defamatory in Question 1b-1k of the Verdict Form); *id.* (Nos. 1c, 1e, 1g)(questions about the allegedly defamatory statements as to Frankspeech on which the jury answered "yes"). Given that both the defamation and IIED claims are based on the very same challenged statements, the Court should reject Coomer's contention and conclude that the IIED claim against Frankspeech fails as a matter of law because of Frankspeech's statutory immunity as well as by operation of the Communications Decency Act's preemption provision, 47 U.S.C. § 230(e)(3).

Furthermore, the jury found that Lindell was not liable for Coomer's IIED claim against him. 11 A.3004 (Lindell Verdict Form No. 2a). The sole basis for that

IIED claim against Lindell was the two statements on which the jury found Lindell liable for defamation. *See* 11 A.3003-04 (Lindell Verdict Form Nos. 1c, 1g; No. 2a). As a result, the only viable basis for the IIED claim against Frankspeech would have been Clements' statement.[12]

As set forth above, Frankspeech is entitled to statutory immunity for Clements' statement (as well as for the two statements made by Lindell). *See* 47 U.S.C. §§ 230(c)(1), 240(f)(3). Frankspeech's immunity is confirmed by the admission by Coomer's counsel that Clements was able to talk about whatever he wanted to at the Symposium, 11 A.3151 (Trial Tr. at 30), a concession which defeats any claim that Frankspeech developed or otherwise played any role in the allegedly offensive content in Clements' statement. *See Accusearch*, 570 F.3d at 1199; *see also supra* (discussing same).

Based on the foregoing, the IIED claim against Frankspeech should be reversed.

[12] Otherwise, the jury verdict forms as to Lindell on one hand, and Frankspeech on the other hand conflict because the same two statements which the jury found did NOT support an IIED claim against Lindell would nonetheless be the basis for a portion of the IIED claim against Frankspeech, in other words, a perverse verdict.

## CONCLUSION

For the foregoing reasons, Appellants ask the Court to reverse judgment in favor of Coomer and enter judgment in favor of Appellants on all of Coomer's claims as a matter of law.

Respectfully Submitted,

**BERENS & MILLER, P.A.**

**SIGNED:** September 17, 2026

*/s/ Barbara Podlucky Berens*

Barbara Podlucky Berens (MN# 209788)
80 South 8th Street, Suite 3720
Minneapolis, MN 55402
(612) 349-6171

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains fewer than 6,500 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing: (1) all required privacy redactions have been made per 10th Cir. R. 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; (3) the digital submissions have been scanned for viruses with the most recent version of a Commercial virus scanning program, and according to the program are free of viruses.

## CERTIFICATE OF SERVICE

I hereby certify that on September 17 and 18, 2026, I electronically filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States

Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, including Charles J. Cain, Bradley A. Kloewer, Ashley N. Morgan, Cain & Skarnulis PLLC, and David M. Beller, Recht Kornfeld PC, counsel for Appellee.

/s/Barbara Podlucky Berens